IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DEANDRE BRADLEY, #M05197, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 17-cv-00862-MJR |
| | ) |
| JEFFERY DENNISON, | ) |
| KAREN SMOOT, | ) |
| DR. A. DAVID, | ) |
| and ETHAN WILKE, | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**REAGAN, Chief District Judge:**

Plaintiff Deandre Bradley, an inmate who is currently incarcerated in Menard Correctional Center ("Menard"), brings this civil rights action pursuant to 42 U.S.C. § 1983 for deprivations of his constitutional rights at Shawnee Correctional Center ("Shawnee"). In the Complaint, Plaintiff alleges that he sustained a pre-incarceration stab wound near his spinal cord that left him permanently disabled. (Doc. 1). He now requires the use of a walker and/or wheelchair, which he was denied by officials at Shawnee in violation of his constitutional rights. *Id*. Plaintiff seeks monetary relief against the defendants. (Doc. 1, pp. 8-9). He also requests injunctive relief, in the form of unspecified "medical treatment and care" and timely responses to his requests for the same at Shawnee.[1] (Doc. 1, p. 9).

---

[1] Plaintiff's request for injunctive relief is moot. Less than ten days after filing this action, Plaintiff transferred to another prison and has since transferred again. (Doc. 5, p. 1; Doc. 11). "[W]hen a prisoner who seeks injunctive relief for a condition specific to a particular prison is transferred out of that prison, the need for relief, and hence the prisoner's claim, become moot." *Lehn v. Holmes*, 364 F.3d 862, 871 (7th Cir. 2004). *See also Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1995). Only if Plaintiff can show a realistic possibility that he would again be incarcerated at Shawnee under the conditions described in the Complaint, would it be proper for the Court to consider injunctive relief. *See Maddox v. Love*, 655 F.3d 709, 716 (7th Cir. 2011) (citing *Ortiz v. Downey,* 561 F.3d 664, 668 (7th Cir. 2009)).

1

Shortly before filing this action on August 14, 2017, Plaintiff filed a similar lawsuit in this District against the same defendants on August 3, 2017. *See Bradley v. Dennison*, No. 17-cv-00829-SMY (S.D. Ill. 2017). The two suits appeared to be duplicative of one another, and Plaintiff failed to pay a filing fee for this action or seek leave to proceed *in forma pauperis* ("IFP") without prepaying the fee. Therefore, this Court entered an Order requiring Plaintiff to confirm, in writing, his intent to pursue this new case and to pay his $400.00 filing fee or file an IFP Motion. (Doc. 4). The Court deferred its preliminary review of this matter pursuant to 28 U.S.C. § 1915A until Plaintiff satisfied both obligations on September 28, 2017. (Docs. 5, 8).

This case is now before the Court for a preliminary review of the Complaint pursuant to § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> > (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> > (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*,

577 F.3d 816, 821 (7th Cir. 2009). The Complaint survives preliminary review under this standard.

## **The Complaint**

In the Complaint, Plaintiff alleges that he sustained a stab wound near his spinal cord prior to his incarceration. (Doc. 1, p. 1). The injury caused permanent disability. *Id*. Plaintiff now suffers from limited mobility. *Id*. He requires the use of a walker to travel short distances and a wheelchair for longer distances. *Id*. He also requires the use of various medical devices[2] to assist with his digestive, bowel, bladder, neurological, circulatory, and respiratory functions. *Id*. Plaintiff suffers from bouts of stool incontinence that necessitate frequent showers. *Id*.

After Shawnee officials denied Plaintiff the use of a walker beginning on March 10, 2017, Plaintiff met with Karen Smoot (health care administrator and ADA coordinator) and Doctor David (prison physician) to discuss his "safety concerns" on March 20, 2017. (Doc. 1, p. 1). Following the meeting, Warden Dennison, Administrator Smoot, and Doctor David made the collective decision to house Plaintiff in the health care unit ("HCU") infirmary. *Id*. Doctor David also granted Plaintiff permission to shower as needed, take extra time to walk to the shower, and exercise in the infirmary hallways. (Doc. 1, p. 2).

The corrections and medical staff refused to carry out these orders. (Doc. 1, p. 2). Plaintiff became involved in several verbal altercations with staff when they denied him shower access. *Id*. On April 30, 2017, staff became physical with Plaintiff twice. *Id*. Afterwards, he was issued a false disciplinary ticket[3] for attempting to assault a staff member. *Id*.

---

[2] These devices include, but are not limited to, external catheters, diapers, enemas, and asthma pumps. (Doc. 1, p. 1).
[3] He asserts no claim against the defendants for these events or the issuance of this ticket. (Doc. 1, p. 2). Any claim arising from this incident is considered dismissed without prejudice from this action.

3

Plaintiff was punished with segregation in the infirmary's isolation cell. (Doc. 1, p. 2). While there, medical and corrections staff continued to deny him shower access. *Id*. His condition deteriorated to the point that he required a wheelchair to travel approximately ten feet from his cell to the shower. *Id*.

Plaintiff spoke with Doctor David on May 9, 2017. (Doc. 1, p. 2). The doctor warned Plaintiff that his physical condition would continue to deteriorate, if he did not get up from his wheelchair and exercise. *Id*. The doctor then canceled Plaintiff's order for a wheelchair and instructed him to use a walker instead. (Doc. 1, pp. 2-3). The same day, Lieutenant Bradford, Sergeant Marvin, and unidentified segregation staff members transported Plaintiff by wheelchair to his new segregation housing assignment in Building One. (Doc. 1, p. 3).

Between May 5, 2017 and May 24, 2017, Plaintiff was allowed a single shower by security staff. (Doc. 1, p. 3). It took staff two days to provide Plaintiff with property that included bedding and sheets. *Id*. It took almost five days to obtain necessary medical supplies, including Fleet enemas, external male catheters, and diapers. *Id*. Plaintiff had no choice but to reuse medical equipment that was intended for a single use. *Id*. In the process, his penis became severely irritated and developed large "lumps and bumps" that caused him to suffer from physical and emotional pain. *Id*.

Plaintiff was also denied the use of a walker in Building One. (Doc. 1, p. 3). Staff told him that it was not allowed in segregation. *Id*. When Plaintiff moved from his bed to the door for food or medication, he had nothing to support him. *Id*. Consequently, Plaintiff fell on three separate occasions and injured his right leg, knee, and foot. *Id*. He suffered from bruising, swelling, and permanent injury. *Id*. Plaintiff asked staff for immediate medical attention each time, but they ignored him. *Id*. After several requests, the staff instructed Plaintiff to submit a

sick call request. *Id*. He submitted several requests between May 11, 2017 and May 25, 2017, but he was not seen by medical staff. *Id*.

Plaintiff eventually lied and complained of chest pain because he knew that he would be sent to the HCU for treatment. (Doc. 1, p. 4). Once there, he told medical staff about his leg, foot, and penis, but they refused to treat him. *Id*. When Plaintiff also complained about the denial of a walker, corrections staff told him to "shut up" because he "wasn't allowed to have it." *Id*. Medical staff instead recommended that Plaintiff submit a sick call request for the walker. *Id*. When he did, they ignored his request. *Id*.

Plaintiff submitted weekly written and verbal complaints during this entire time period to Warden Dennison. (Doc. 1, p. 2). He complained about being denied access to the prison's programs, services, and activities. *Id*. Warden Dennison assured him that a meeting would be scheduled to discuss his concerns. *Id*. It is unclear whether the meeting occurred.

Warden Dennison did respond to a grievance that Plaintiff filed in late May. (Doc. 1, p. 4). In the grievance, Plaintiff complained about the conditions described above. *Id*. In response, Plaintiff was moved to a new cell on May 24, 2017. *Id*. He was not placed in "the safest housing" but was allowed to take showers each day beginning sometime after his transfer. *Id*. He was also allowed to use a walker. *Id*. When Warden Dennison visited Plaintiff at his new cell, he allegedly feigned ignorance about Plaintiff's living conditions in Building One. *Id*.

On May 26, 2017, Plaintiff received a pass to speak with a mental health provider via telemedicine. (Doc. 1, p. 4). While waiting for the appointment, he spoke with Ethan Wilke, the prison nursing director. *Id*. After describing his medical conditions, his need for a walker, and his denial of medical care for the leg and foot injury, Wilke directed Nurse Jessica to place Plaintiff on the sick call list. *Id*. He was seen by Nurse Perkins two days later and given

5

antifungal cream for his penis, orders for daily showers, and a referral to Doctor David for further examination of his leg and foot injuries. *Id*.

On May 31, 2017, Plaintiff met with Doctor David to discuss his injuries. (Doc. 1, p. 4). After telling the doctor about his three falls, the doctor "barely looked at [his] injuries." *Id*. He refused to examine Plaintiff's leg or foot. *Id*. Doctor David concluded that Plaintiff's pre-existing injuries were bothering him. *Id*.

Plaintiff later submitted a sick call request for treatment of his shoulder, after it began to bother him. (Doc. 1, pp. 4-5). He did not mention his leg or foot injuries until the appointment because he feared that the appointment would be cancelled. *Id*. A physician's assistant met with him, examined his leg and foot, and referred Plaintiff back to Doctor David "with notes." (Doc. 1, p. 5).

Doctor David met with Plaintiff again on June 22, 2017. (Doc. 1, p. 5). This time, the doctor examined Plaintiff's leg and foot and concluded that his latest injury caused his foot to "drop." *Id*. The doctor ordered Plaintiff a drop foot brace. *Id*.

Plaintiff now sues Warden Dennison, Administrator Smoot, Doctor David, and Nursing Director Wilke for denying him adequate medical care, subjecting him to unconstitutional conditions of confinement, and violating his right to access prison services and programs at Shawnee.

## **Discussion**

To facilitate the orderly management of future proceedings in this case, and in accordance with the objectives of Federal Rules of Civil Procedure 8(e) and 10(b), the Court deems it appropriate to organize the claims in Plaintiff's *pro se* Complaint into the following enumerated counts:

> **Count 1** – Defendants denied Plaintiff adequate medical care for his preexisting medical conditions stemming from an old stab wound when they denied him access to a wheelchair, walker, medical supplies, and showers at Shawnee beginning in March 2017, in violation of the Eighth Amendment.
>
> **Count 2** – Defendants subjected Plaintiff to unconstitutional conditions of confinement when they denied him access to a wheelchair, walker, medical supplies, showers, and a handicap accessible cell at Shawnee beginning in March 2017, in violation of the Eighth Amendment.
>
> **Count 3** – Defendants violated Plaintiff's rights under the Rehabilitation Act and/or Americans with Disabilities Act when they deprived him of a wheelchair, walker, medical supplies, showers, and adequate housing at Shawnee beginning in March 2017.
>
> **Count 4** – Doctor David and Nursing Director Wilke exhibited deliberate indifference to Plaintiff serious medical needs when they failed to ensure that his right leg and foot injuries were promptly treated after he fell three times in his segregation cell in May 2017, in violation of his Eighth Amendment rights.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts should not be construed as an opinion regarding their merit. **Any claims not recognized above but encompassed by the allegations in the Complaint are considered dismissed without prejudice from this action.**

### Counts 1 and 4

The Eighth Amendment to the United States Constitution protects prisoners against cruel and unusual punishment. U.S. CONST., amend. VIII. Prison officials violate the Eighth Amendment when they respond to an inmate's serious medical needs with deliberate indifference. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Erickson v. Pardus*, 551 U.S. 89, 94 (2006) (*per curiam*); *Berry v. Peterman*, 604 F.3d 435, 439 (7th Cir. 2010). A claim for the denial of medical care has two components. *Berry*, 604 F.3d at 440. First, a prisoner must show that he suffered from a sufficiently serious medical condition, which is an objective standard. *Id.*

7

Second, he must demonstrate that state officials acted with deliberate indifference to the prisoner's health or safety, which is a subjective standard. *Id*.

Plaintiff's many medical conditions are sufficiently serious to support an Eighth Amendment claim in Counts 1 and 4. A serious medical condition is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Gutierrez v. Peters,* 111 F .3d 1364, 1371 (7th Cir. 1997). Plaintiff suffers from numerous conditions that stem from his old stab wound and have been diagnosed as requiring treatment. He requires a walker, wheelchair, enemas, external catheters, asthma pumps, etc. He also injured his right leg and foot in May 2017 and requires the use of a drop foot brace.

With regard to Count 1, the Complaint also suggests that Warden Dennison, Administrator Smoot, and Doctor David responded to Plaintiff's general medical needs with deliberate indifference. This subjective standard is satisfied when prison officials are "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," and they actually draw the inference. *Greeno v. Daley*, 414 F.3d 645, 652-53 (7th Cir. 2005). Plaintiff alleges that all three defendants were involved in the decision to move him into the infirmary for better medical care and the decision to transfer him out of the infirmary despite knowing he would be denied medical care, supplies, and devices. He allegedly complained to each defendant about the denial of proper medical care but still endured the conditions for two or more months. Under the liberal pleading standard applicable to *pro se* complaints, Plaintiff has stated sufficient allegations to support a claim against these individuals. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). Count 1 shall receive further review against all three defendants.

With regard to Count 4, the Complaint also suggests that Doctor David exhibited deliberate indifference to Plaintiff's leg and foot injuries. According to the Complaint, the doctor barely looked at Plaintiff's injuries during an appointment in late May. It took another month, as well as several interim appointments with nurses, before Doctor David examined Plaintiff's injuries, diagnosed him with a drop foot, and prescribed a brace. Although it remains to be seen whether this delay in treatment caused or exacerbated the injury, the Court will allow Count 4 to proceed against Doctor David at this time.

Counts 1 and 4 shall be dismissed against Nursing Director Wilke, who is the only other defendant named in connection with both claims. Plaintiff proceeds against this defendant based exclusively on a theory of *respondeat superior* liability, but the doctrine does not apply in § 1983 actions. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001); *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001). Plaintiff must instead demonstrate that each defendant is "personally responsible for the deprivation of a constitutional right." *Id*. Plaintiff makes it clear that Wilke is not. According to the Complaint, this defendant timely responded to Plaintiff's requests for medical treatment and took necessary steps to secure proper treatment on his behalf. Plaintiff also explains that Nursing Director Wilke supervised other medical providers who exhibited deliberate indifference toward Plaintiff, and he will properly identify these individuals in due course. However, naming the nursing director as a defendant in place of his or her subordinates is not the proper way to preserve or pursue claims against unknown defendants in a § 1983 action.[4] Counts 1 and 4 shall be dismissed without prejudice against Nursing Director

---

[4] Plaintiff should have instead identified these unknown individuals in his case caption and throughout the Complaint in generic terms, such as "John/Jane Doe." He should have also included specific allegations against each unknown defendant that describes what he or she did to violate Plaintiff's rights. The Court will generally name the warden, in his or her official capacity, for the purpose of identifying these unknown individuals during discovery and then allow the plaintiff to substitute the correct individuals, in place of the unknown defendants, once they are properly identified. *Donald v. Cook Cnty. Sheriff's*

9

Wilke based on Plaintiff's failure to state a claim against this defendant upon which relief may be granted.

In summary, Count 1 shall receive further review against Warden Dennison, Administrator Smoot, and Doctor David in their individual capacities, and Count 4 shall proceed only against Doctor David. These claims shall be dismissed without prejudice against Nursing Director Wilke and all other individuals named in connection with said claims.

**Count 2**

Like all claims arising under the Eighth Amendment, claims of unconstitutional conditions of confinement include an objective and a subjective component. *Rhodes v. Chapman*, 452 U.S. 337, 346-47 (1981). To satisfy the objective component of this claim, the condition must result in the unquestioned and serious deprivation of the minimal civilized measure of life's necessities. *Id.* Conditions must be "extreme" and not merely uncomfortable. *Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992). The conditions must exceed contemporary bounds of decency of a mature civilized society. *Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992). The subjective component is satisfied where the plaintiff shows that the defendant was aware of and disregarded conditions that posed an excessive risk to the inmate's health. *Farmer v. Brennan*, 511 U.S. 825, 837, 842 (1994); *Wilson v. Seiter*, 501 U.S. 294, 302 (1991); *McNeil v. Lane*, 16 F.3d 123, 124 (7th Cir. 1994); *Sain v. Wood*, 512 F.3d 886, 894 (7th Cir. 2008).

Plaintiff describes conditions that satisfy the objective component of this claim. He was allegedly assigned to cells in the infirmary and Building One that were not equipped for an individual with Plaintiff's needs. He was denied bedding, necessary medical supplies, and showers. He was also denied a walker, a wheelchair, and a cell equipped with grab bars.

---

*Dep't*, 95 F.3d 548, 555 n. 3 (7th Cir. 1996) (collected cases); *see also K.F.P. v. Dane County,* 110 F.3d 516, 519 (7th Cir. 1997).

Further, Warden Dennison, Administrator Smoot, and Doctor David allegedly made the collective decision regarding Plaintiff's cell placement. He complained to each of them about the conditions and maintains that the defendants took insufficient steps to improve the conditions. Count 2 shall receive further review against these three defendants in their individual capacities. This claim shall be dismissed without prejudice against Nursing Director Wilke for the same reason Counts 1 and 4 were dismissed against him.

**Count 3**

Although the Complaint makes no specific reference to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, or the Rehabilitation Act, 29 U.S.C. §§ 794-94e, this omission is not fatal to Plaintiff's claims under either the ADA or Rehabilitation Act. Courts "are supposed to analyze a litigant's claims and not just legal theories that he propounds," particularly when the plaintiff is proceeding *pro se*. *Norfleet v. Walker*, 684 F.3d 688, 690 (7th Cir. 2012) (citations omitted). Therefore, the Court will consider both claims.

To establish a violation of Title II of the ADA, a plaintiff "must prove that he is a 'qualified individual with a disability,' that he was denied 'the benefits of the services, programs, or activities of a public entity' or otherwise subjected to discrimination by such an entity, and that the denial or discrimination was 'by reason of' his disability." *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015) (citing *Love v. Westville Corr. Ctr.*, 103 F.3d 558, 560 (7th Cir. 1996) (citing 42 U.S.C. § 12132)). A claim under the Rehabilitation Act is "functionally identical" to a claim under the ADA. *Id.* Plaintiff must allege that "(1) he is a qualified person (2) with a disability and (3) the [state agency] denied him access to a program or activity because of his disability." *Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 672 (7th Cir. 2012). Under the Rehabilitation Act, the relevant state agency must also accept federal funds, which all

states do. *Id*. at 671 (citations omitted). Discrimination under both includes the failure to accommodate a disability.

Plaintiff alleges that he is permanently disabled and requires the use of numerous assistive devices to increase his mobility and bodily functions. These devices include, but are not limited to, a walker and/or wheelchair. He also claims that he was denied access to services and programs at Shawnee because of a disability. These services and programs include, but are not limited to, showers. The allegations suggest that prison services and programs are largely unavailable to Plaintiff because of his disability. Given these allegations, the Court will allow the ADA/Rehabilitation Act claim to proceed.

However, the claim in Count 3 cannot proceed against the individual defendants. Individual employees of the Illinois Department of Corrections cannot be sued under the ADA or Rehabilitation Act. *Jaros*, 684 F.3d at 670. The proper defendant is the relevant state department or agency. *See* 42 U.S.C. § 12131(1)(b); *Jaros*, 684 F.3d at 670 n. 2 (individual capacity claims are not available; the proper defendant is the agency or its director (in his official capacity)). Warden Dennison shall remain named in connection with this claim in his official capacity only. In addition, the Clerk shall be directed to add the IDOC Director, in his or her official capacity only, as a defendant in connection with this claim. *See* FED. R. CIV. P. 19(a)(2). Count 3 shall otherwise be dismissed with prejudice against the defendants.

**Claims Against Non-Parties**

The Complaint refers to numerous individuals who are not named as defendants in this action, including: Lieutenant Bradford, Sergeant Marvin, Nurse Jessica, Nurse Perkins, a physician's assistant, segregation staff, corrections staff, and medical staff, among others. When parties are not listed in the caption, this Court will not treat them as defendants. *See* FED. R. CIV.

P. 10(a) (noting that the title of the complaint "must name all the parties"); *Myles v. United States*, 416 F.3d 551, 551-52 (7th Cir. 2005) (holding that to be properly considered a party, a defendant must be "specif[ied] in the caption"). Any claims against these individuals should therefore be considered dismissed without prejudice.

**Disposition**

The Clerk is **DIRECTED** to **ADD** the **ILLINOIS DEPARTMENT OF CORRECTIONS DIRECTOR (official capacity only)** as a defendant in CM/ECF.

**IT IS ORDERED** that **COUNTS 1** and **2** will proceed against Defendants **JEFFERY DENNISON, KAREN SMOOT,** and **A. DAVID** in their individual capacities only, and **COUNT 4** will proceed against Defendant **A. DAVID** in his individual capacity. These claims are **DISMISSED** without prejudice against all other defendants for failure to state a claim upon which relief may be granted.

**IT IS ORDERED** that **COUNT 3** will proceed against Defendants **JEFFERY DENNISON (official capacity only)** and **DIRECTOR of the ILLINOIS DEPARTMENT OF CORRECTIONS (official capacity only)**. This claim is **DISMISSED** with prejudice against all other defendants for failure to state a claim upon which relief may be granted.

**IT IS ORDERED** that Defendant **ETHAN WILKE** is **DISMISSED** without prejudice from this action because no claim is stated against this defendant upon which relief may be granted.

With regard to **COUNTS 1, 2, 3,** and **4**, the Clerk of Court shall prepare for Defendants **DENNISON, SMOOT, DAVID,** and **ILLINOIS DEPARTMENT OF CORRECTIONS DIRECTOR**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms,

a copy of the Complaint (Doc. 1), and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Stephen C. Williams** for further pre-trial proceedings. Further, this entire matter shall be **REFERRED** to United States Magistrate Judge **Williams** for disposition, pursuant to Local

Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, despite the fact that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court Documents 5, 6, and a blank motion for counsel and blank civil rights complaint form Sent to Plaintiff at St. Clair County Jail.and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: October 25, 2017**

<pre>                                        s/ MICHAEL J. REAGAN
                                        <b>U.S. District Judge</b></pre>