UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DEANDRE BRADLEY, </br></br> Plaintiff, </br></br> vs. </br></br> JEFFREY DENNISON, KAREN SMOOT, ALFONSO DAVID, ROBERT JEFFERYS, and JONATHAN BOTARF, </br></br> Defendants. | ) </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) Cause No. 3:17-cv-00862-GCS </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) |

## MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

Plaintiff Deandre Bradley first filed suit against Defendants Jeffrey Dennison, Karen Smoot, Robert Jeffreys, Jonathan Botarf, Dr. Alfonso David, and other defendants who have since been terminated from the case. (Doc. 1). Plaintiff brings this claim pursuant to 42 U.S.C. § 1983, alleging that Defendants were deliberately indifferent to Plaintiff's serious medical needs by placing him in segregation housing, and denying him access to a wheelchair, walker, medical supplies, and showers. (Doc. 94, p. 38). As to Defendant David specifically, Plaintiff asserts that Defendant was deliberately indifferent to Plaintiff's serious medical need in failing to treat his drop foot until June 2017. (Doc. 94, p. 39). The present motion for summary judgment is on behalf of Defendant David. (Doc. 220). For the reasons delineated below, the motion for summary judgment is **GRANTED**.

## FACTUAL ALLEGATIONS

On December 19, 2010, while living in a group home, Plaintiff suffered a stabbing attack in his lower back which nearly severed his spinal cord. (Doc. 231, p. 5). As a result of the injury, Plaintiff required a catheter, diapers, and a walker. (Doc. 231, p. 5). Plaintiff was incarcerated on or about February 28, 2017; he was transferred to Shawnee Correctional Center on March 11, 2017. (Doc. 221, p. 2-3).

Defendant first treated Plaintiff on March 20, 2017; at that time, Defendant noted that Plaintiff had not been given a new catheter since he arrived at the correctional center. (Doc. 221, p. 3). After his meeting with Plaintiff, Defendant ordered that Plaintiff should change his catheter every other day. (Doc. 221, p. 4). Finally, Defendant's notes state that Plaintiff was to be security housed, "per A/W Walker." (Doc. 221, p. 4). Plaintiff was security housed in the infirmary from March 20, 2017 through May 9, 2017. (Doc. 221, p. 4).

Plaintiff first informed Defendant on April 25, 2017, that his right leg would "go to sleep," causing him to drag it when he walked. (Doc. 221, p. 4). On April 30, 2017, prison staff called a nurse to examine Plaintiff after he tried to assault staff; at that time, Plaintiff reported that he was not able to use his legs. (Doc. 221, p. 4). The nurse noted that Plaintiff could only feel the bottom of his right foot. (Doc. 231, p. 3). When Defendant examined Plaintiff the following day, Plaintiff reported that he fell while swinging his walker during the incident. (Doc. 221, p. 5). Shortly thereafter, and on the same day, Plaintiff was placed on segregation status. (Doc. 221, p. 5). Plaintiff was then moved to segregation housing approximately eight days later, on May 9, 2017. (Doc. 221, p. 6).

Defendant again examined Plaintiff on May 8, 2017, after Plaintiff complained of back pain. (Doc. 221, p. 6). Although Plaintiff used a wheelchair at that time, Defendant assigned Plaintiff to a walker to avoid muscle wasting and stiffness. (Doc. 221, p. 6). Plaintiff was medically permitted to shower three times per week as of the following day. (Doc. 221, p. 6).

However, shortly after his transfer to segregation, Plaintiff reported that he was only permitted to shower a "few times" during the month. (Doc. 221, p. 7). Although Plaintiff was permitted to shower in the relatively more accessible infirmary showers, Plaintiff was required to walk approximately 125 feet to those showers. (Doc. 231, p. 12). Due to his segregation status, Plaintiff was placed in waist restraints on his way to the shower. (Doc. 231, p. 7). Overall, Plaintiff received only three showers during the month of May. (Doc. 231, p. 7). Furthermore, during the first five days of Plaintiff's stay in segregation, Plaintiff did not have access to fresh catheters, among other necessary medical supplies. (Doc. 231, p. 6). As a result of Plaintiff's inability to access showers and fresh catheters, Plaintiff developed a fungible infection in and around his penis. (Doc. 231, p. 9).

Plaintiff last saw Defendant on June 22, 2017. (Doc. 221, p. 7). During his visit, Plaintiff informed Defendant that he had numbness in his right foot. (Doc. 221, p. 7). This numbness caused Plaintiff to drag his foot, which often tripped him. (Doc. 221, p. 7). After that meeting, Defendant ordered a split to treat drop foot on Plaintiff's right foot. (Doc. 221, p. 7).

## LEGAL STANDARDS

Summary judgment is proper when the pleadings and affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. PROC. 56(c); *Oates v. Discovery Zone*, 116 F.3d 1161, 1165 (7th Cir. 1997)(citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). The movant bears the burden of establishing the absence of a genuine issue as to any material fact and entitlement to judgment as a matter of law. *See Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997)(citing *Celotex*, 477 U.S. at 323). This Court must consider the entire record, drawing reasonable inferences and resolving factual disputes in favor of the non-movant. *See Regensburger v. China Adoption Consultants, Ltd.*, 138 F.3d 1201, 1205 (7th Cir. 1998)(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). *See also Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009)(stating that "we are not required to draw every conceivable inference from the record . . . we draw only reasonable inferences")(internal citations omitted). Summary judgment is also appropriate if a plaintiff cannot make a showing of an essential element of his claim. *See Celotex*, 477 U.S. at 322. While the Court may not "weigh evidence or engage in fact-finding[,]" it must determine if a genuine issue remains for trial. *Lewis v. City of Chicago*, 496 F.3d 645, 651 (7th Cir. 2007).

In response to a motion for summary judgment, the non-movant may not simply rest on the allegations in his pleadings; rather, he must show through specific evidence that an issue of fact remains on matters for which he bears the burden of proof at trial. *See Walker v. Shansky*, 28 F.3d 666, 670–671 (7th Cir. 1994), aff'd, 51 F.3d 276 (citing *Celotex*, 477 U.S. at 324). No issue remains for trial "unless there is sufficient evidence favoring

the non-moving party for a jury to return a verdict for that party . . . if the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–250 (citations omitted). *Accord Starzenski v. City of Elkhart*, 87 F.3d 872, 880 (7th Cir. 1996); *Tolle v. Carroll Touch, Inc.*, 23 F.3d 174, 178 (7th Cir. 1994). In other words, "inferences relying on mere speculation or conjecture will not suffice." *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 407 (7th Cir. 2009) (internal citation omitted). *See also Anderson*, 477 U.S. at 252 (finding that "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]"). Instead, the non-moving party must present "definite, competent evidence to rebut the [summary judgment] motion." *EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000) (internal citation omitted).

## ANALYSIS

A prisoner seeking to establish that the medical care he received in prison was so insufficient as to violate his Eighth Amendment rights must prove that: (1) he had an objectively serious medical need, and (2) the defendant prison official was deliberately indifferent to that need. *See Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011). *See also Greeno v. Daley*, 414 F.3d 645, 652-653 (7th Cir. 2005); *Langston v. Peters*, 100 F.3d 1235, 1240 (7th Cir. 1996); *Thomas v. Walton*, 461 F.Supp.2d 786, 793 (S.D. Ill. 2006). A medical condition is objectively serious if a physician has determined that treatment is mandated, or if it is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Johnson v. Snyder*, 444 F.3d 579, 584-585 (7th Cir. 2006)(citing *Gutierrez*

*v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997)), overruled on other grounds in *Hill v. Tangherlini*, 724 F.3d 965, 968 n.1 (7th Cir. 2013). In order to find that a defendant was deliberately indifferent, there must be a condition that required treatment, knowledge on the part of the health care provider of an excessive risk to health or safety, and a decision to disregard that risk. *See Sellers v. Henman*, 41 F.3d 1100, 1102 (7th Cir. 1994)(citing *Farmer v. Brennan*, 511 U.S. 825 (1994)). Deliberate indifference exists only where an official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837-838. Moreover, "[d]eliberate indifference implies at a minimum actual knowledge of impending harm easily preventable, so that a conscious, culpable refusal to prevent harm can be inferred from the defendant's failure to prevent it." *Thomas*, 461 F. Supp. 2d at 793 (citing *Duckworth v. Franzen*, 780 F.2d 645, 653 (7th Cir. 1985), abrogated on other grounds by *Haley v. Gross*, 86 F.3d 630, 645 n. 34 (7th Cir. 1996)).

When a plaintiff asserts a claim of deliberate indifference on the basis of a defendant physician's care, that plaintiff must show the decision is "such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate the person responsible did not base the decision on such judgment." *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011). *See also Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014). This standard exceeds mere negligence or even gross negligence; instead, a plaintiff must show intent or criminal recklessness. *See Farmer*, 511 U.S. at 837-838. A plaintiff is entitled to demand only reasonable measures to prevent a substantial risk of harm, rather than a

specific course of care. *See Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Accordingly, a mere difference of opinion in proper treatment does not constitute deliberate indifference. *See Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001)(citing *Estate of Cole by Pardue v. Fromm*, 94 F.3d 254, 261 (7th Cir. 1996)). *See also Estelle v. Gamble*, 49 U.S. 97, 107 (1976).

Defendant argues that summary judgment is appropriate because: (i) Defendant was not involved in the decision to transfer Plaintiff from the health care unit ("HCU") to segregation (Doc. 221, p. 10); (ii) Defendant neither knew nor should have known that Plaintiff could not access ambulatory assistive devices, medical supplies or showers while housed in segregation (Doc. 221, p. 13); (iii) Defendant was not deliberately indifferent to Plaintiff's right foot injury (Doc. 221, p. 16); and, in the alternative, (iv) that Plaintiff suffered no harm due to any untimeliness in Defendant's failure to treat Plaintiff's right foot injury. (Doc. 221, p. 17).

In response to Defendant's claims regarding Plaintiff's transfer, Plaintiff asserts that Defendant had actual knowledge of the risks of moving Plaintiff from the HCU to segregation and that his failure to intervene constituted deliberate indifference. (Doc. 231, p. 11-12). According to Plaintiff, as a result of the transfer from HCU to segregation, Plaintiff was unable to access handicap-accessible showers. As a result, Plaintiff was only able to shower three times during May 2017. (Doc. 231, p. 13). Plaintiff further asserts that Defendant was the only person capable of filling Plaintiff's prescription for catheters and other necessary medical supplies. Because Plaintiff was only able to shower infrequently and did not have access to fresh catheters for five days, he suffered a fungal infection in

and around his penis. *Id.* Finally, Plaintiff states that he was forced to walk approximately 125 feet to reach the handicap-accessible showers and that his waist restraints inhibited his walker. *Id.* In response to Defendant's claims regarding Plaintiff's right foot injury, Plaintiff states that, when treated early and adequately, Plaintiff's injury could have been repaired. (Doc. 231, p. 16). Because Defendant failed to diagnose and treat Plaintiff's injury, Plaintiff claims his injury is now permanent. (Doc. 231, p. 17). The Court finds that there is no evidence on which a reasonable jury could find Defendant deliberately indifferent to Plaintiff's transfer from HCU to segregation, Plaintiff's lack of access to necessary medical supplies, or Plaintiff's right foot injury. Therefore, the motion for summary judgment is granted.

### I.     Plaintiff's Transfer to Segregation

In order to succeed on a claim for deliberate indifference to a serious medical need against a physician, a plaintiff must show that the defendant-physician's decision was "such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate the person responsible did not base the decision on such judgment." *Roe*, 631 F.3d at 857. Even evidence that at least some medical professionals would have chosen to pursue a different course of treatment is, alone, insufficient to support a claim through summary judgment proceedings. *See Steele v. Choi*, 82 F.3d 175, 179 (7th Cir. 1996). Because a physician's treatment decisions are necessarily predicated on each individual patient's symptoms and medical necessities, delineating between acceptable differences of opinion and deliberate indifference often escapes a bright line analysis. *See Petties*, 836 F.3d at 729. The few instances in which courts do approach a

bright line analysis includes when a physician ignores a specialist's recommendations, *see Arnett*, 658 F.3d at 753; when a physician fails to follow existing protocol, *see Petties*, 836 F.3d at 729 (citing *Mata v. Saiz*, 427 F.3d 745, 757 (10th Cir. 2005)); and when a physician chooses an easier course of treatment even when that treatment is less effective than other available options. *See Walker v. Peters,* 233 F.3d 494, 498 (7th Cir. 2000). Inherent to each of these situations is the defendant physician's ability to make a decision impacting the plaintiff's medical treatment and care. *Cf. Perez v. Fenoglio*, 792 F.3d 768, 779 (7th Cir. 2015)(acknowledging that showing "someone else was responsible" could support granting summary judgment after discovery); *Walker v. Benjamin*, 293 F.3d 1030, 1038 (7th Cir. 2002)(upholding a decision granting summary judgment when the plaintiff failed to show that delay between the initial visit, diagnosis and specialist's treatment were within the defendant physician's control).

To the extent that a plaintiff's medical treatment depends on inpatient care, the responsibility to secure that care falls on the physician treating the plaintiff. *See Rice ex rel. Rice v. Correctional Medical Services*, 675 F.3d 650, 686 (7th Cir. 2012). For example, in *Garcia v. Shah*, No. 16-cv-819-MJR, 2016 WL 6679428 (S.D. Ill. Nov. 14, 2016), the plaintiff's complaint against a defendant physician survived a motion to dismiss when the physician knew that the plaintiff's segregation cell conditions caused him ulcers, but nevertheless took no steps to move that plaintiff to the infirmary. *Id.* at *4.

However, the decision to release a patient from the infirmary to segregation where conditions are worse is not always indicative of deliberate indifference. For instance, a defendant physician sought inpatient care and forced medication for the decedent in *Rice*

*ex rel. Rice v. Correctional Medical Services*, 675 F.3d 650 (7th Cir. 2012). However, his colleague overrode his decision and denied inpatient care. *Id.* at 686. The defendant physician had the ability to secure inpatient care at another facility. *Id.* Doing so may have avoided the decedent's death. *Id.* Although the physician's failure to further pursue inpatient care could be considered negligent, it did not rise to the level of deliberate indifference. *Id.* at 687. Similarly, in *Leslie v. Eovaldi*, No. 16-cv-00422-NJR, 2020 WL 1287947 (S.D. Ill. Mar. 18, 2020), a defendant physician's decision to discharge a patient from the infirmary to "naturally pass" a razor blade the plaintiff had swallowed did not exceed the bounds of professional judgment because such a choice was a legitimate method of treatment. *Id.* at *4.

However, each of these cases is distinct from the case at hand in that the physicians had the final say in whether the plaintiff was housed in the infirmary or whether that plaintiff was released to segregation; underlying the housing decision was a decision regarding plaintiff's medical treatment. In contrast, here, Defendant is not able to decide when a patient is security housed in the infirmary or housed in segregation because infirmary housing was not medically necessary. (Doc. 221, p. 11). Defendant had the ability to determine whether a prisoner-patient would be housed in the infirmary for medical reasons. (Doc. 221, Exh. F., 62:4-19). However, if Warden Walker determined that there was another reason necessitating that a prisoner be housed in the infirmary, that prisoner would be "security housed" in HCU. (Doc. 221, Exh. E, 68:3-22).

In his deposition, Warden Walker differentiates between *medically* releasing a patient from the infirmary, and *physically* releasing a patient from security housing. For

example, Warden Walker states that Defendant "can release them from the infirmary, but that doesn't mean" that Warden Walker "is going to let them out. Medically speaking, he can release them." (Doc. 221, Exh. F., 63:19-21). This distinction is vital. Warden Walker "security housed" Plaintiff in the infirmary prior to his transfer to segregation; this housing suggests that Plaintiff was not in the infirmary for medical reasons. (Doc. 221, p. 4; *see also* Doc. 231, p. 3). In fact, Defendant's plan of care notes that Warden Walker made this decision. *Id*. Equally, prison infraction documents show that Plaintiff was assigned to segregation as a disciplinary measure following an incident on April 30, 2017. (Doc. 221, Exh. D). Unlike *Garcia* or *Rice*, Plaintiff's transfer from the infirmary to segregation was not related to medical treatment; Defendant had no available alternative course of action which would have secured Plaintiff's stay in the infirmary.

Plaintiff argues that Defendant had considerable influence on which prisoners were permitted to remain in the infirmary. (Doc. 231, p. 12). However, Plaintiff also admits that Defendant did not have "the final say" in housing decisions. *Id*. Plaintiff blurs the distinction between medical and security housing in the infirmary. By Plaintiff's own account, Defendant's input regarding a prisoner's housing was limited to medical decisions. *Id*. (stating "when discussing how *medical* decisions played into housing decisions, Warden Dennison testified that 'for the most part, [Dr. David] made the determination as to who was housed in the infirmary[]'") (emphasis added)). Plaintiff cannot show that Defendant's decisions regarding Plaintiff's housing were a substantial departure from accepted professional judgment because Defendant did not make those

decisions at all, nor could he influence that decision beyond providing medically pertinent information. Accordingly, summary judgment is granted on this count.

## II. Defendant's Actual Knowledge Regarding Plaintiff's Access to his Walker, Necessary Medical Supplies, and Showers

A defendant is only deliberately indifferent to a serious medical need when that defendant is subjectively aware of the risk at issue. *See Farmer*, 511 U.S. at 837-838. When a defendant is subjectively aware of the risk at issue, the defendant must then take steps to mitigate that risk if it is within his or her power or control to do so. *See Garcia*, 2016 WL 6679428, at *4. Subjective awareness of a risk requires actual knowledge; merely constructive knowledge is insufficient. *See LaBrec v. Walker*, 948 F.3d 836, 841 (7th Cir. 2020)(citing *Sinn v. Lemmon*, 911 F.3d 412, 419 (7th Cir. 2018)).

The test for determining whether a defendant had such knowledge is two-pronged: first, the defendant must be aware of the facts from which an inference could be drawn that a substantial risk of harm exists; second, the defendant must also draw this inference. *See Gevas v. McLaughlin*, 798 F.3d 475, 480 (7th Cir. 2015)(citing *Farmer*, 511 U.S. at 837)). Although constructive knowledge is insufficient for meeting this burden, a plaintiff may prove a defendant's knowledge circumstantially. *See LaBrec*, 948 F.3d at 841. Sufficient circumstantial evidence of actual knowledge includes the very fact that a risk of harm was obvious. *See Farmer*, 511 U.S. at 832. Other examples of sufficient circumstantial evidence of actual knowledge include showing, *e.g.*, that a defendant was so familiar with a plaintiff's (insufficient) treatment that he could thoroughly summarize the treatment for non-medical prison officials; that a defendant's approval was required

before a plaintiff could receive treatments; or that a defendant explicitly acknowledged that other physicians requested a particular treatment for the plaintiff. *See Hays v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008). However, the mere fact that the harm a plaintiff alleges was obvious and did, in fact, occur, does not inherently show that the defendant had actual knowledge of the harm. Hindsight is not the measure of a defendant's conduct in a claim for deliberate indifference. *See Collignon v. Milwaukee County*, 163 F.3d 982, 989 (7th Cir. 1998). *See also Minix v. Canarecci*, 597 F.3d 824, 833 (7th Cir. 2010)(noting that although, in hindsight, a defendant physician's decision to release a plaintiff from medical observation "might have been a mistake[,]" the plaintiff's evidence nevertheless failed to show that the defendant was deliberately indifferent). Plaintiff asserts three distinct harms arising from his transfer to segregation: (i) the inability to use his walker effectively, (ii) a lack of necessary medical supplies, and (iii) a lack of access to showers. There is no evidence that Defendant had actual knowledge of the risk to Plaintiff associated with any of the three harms Plaintiff lists. Therefore, summary judgment is granted as to all three issues.

    A. *Plaintiff's ability to use his walker*

Defendant claims that he did not have actual knowledge of a substantial risk of harm that Plaintiff would be denied access to his walker, necessary medical supplies, or showers as a result of Plaintiff's transfer from HCU to segregation. (Doc. 221, p. 13). Specifically, Defendant states that the decision to assign Plaintiff a walker, rather than a wheelchair, was a medical decision to prevent muscle wasting and atrophy. (Doc. 221, p. 14). Only security could decide to take Plaintiff's walker; Defendant neither knew of nor

participated in that decision. (Doc. 221, p. 13). In response, Plaintiff states that he consistently told Defendant that he required additional ambulatory assistance besides his walker, *i.e.*, a wheelchair. (Doc. 231, p. 14). Plaintiff also asserts that, because of the transfer to segregation, Plaintiff was required to wear waist restraints that inhibited the safe use of his walker. (Doc. 231, p. 14). According to Plaintiff, Defendant should have known that this was a necessary result of Plaintiff's transfer from HCU to segregation. (Doc. 231, p. 14).

The test for determining whether a defendant was deliberately indifferent to a serious medical need is what that defendant *actually* knew. Whether Defendant should have known that Plaintiff would be unable to use his walker after his transfer from HCU to segregation is immaterial. The record does contain evidence that Plaintiff self-reported to Defendant that he could not walk and required his wheelchair. (Doc. 221, p. 5; Doc. 231, p. 4).[1] However, there is no evidence that Plaintiff, or any other person, informed Defendant that Plaintiff could not use his walker, had his walker taken away, or that his required waist restraints inhibited the use of his walker. Even if Defendant were subjectively aware of the risk to Plaintiff that he could not use his walker to access the HCU shower, there is no evidence that Defendant could take steps to mitigate that risk

---

[1] To the extent that Plaintiff's argument can be construed as an allegation of ineffective treatment because the walker is less effective than a wheelchair, this argument is denied. Persisting in a course of ineffective treatment constitutes cruel and unusual punishment in violation of the Eighth Amendment when a defendant doctor chooses the "easier and less efficacious treatment" without exercising professional judgment. *Arnett* 658 F.3d at 754 (internal citations omitted). *See also White v. Napoleon*, 897 F.2d 103, 109 (3rd Cir. 1990)(finding a violation of the Eighth Amendment where a defendant doctor insisted on continuing the same course of treatment when that doctor knew the treatment was painful and ineffective). Here, Defendant chose to assign Plaintiff to a walker in order to build muscle and avoid muscle wasting. This decision was soundly within the bounds of professional judgment.

because Defendant did not know that Plaintiff was unable to use his walker. Therefore, summary judgment is granted as to this issue.

### B. *Plaintiff's access to necessary medical supplies*

Plaintiff asserts that, as a result of his transfer from HCU to segregation, he was forced to use the same catheter for five days. (Doc. 231, p. 13). Because Defendant is the only authority able to order medical supplies when needed, Plaintiff argues that Defendant is responsible for the omission. (Doc. 231, p. 13). Furthermore, Plaintiff states that Defendant had actual knowledge that Plaintiff was not receiving his medical supplies because Plaintiff's medical records did so indicate. (Doc. 231, p. 14). As a result of his inability to change his catheter, Plaintiff asserts that he developed a fungal infection in and around his penis. (Doc. 231, p. 13).

However, Defendant states that there is a distinction between ordering the medical supplies and executing Plaintiff's prescription. (Doc. 238, p. 8). Defendant argues that prison nurses bore ultimate responsibility for filling Plaintiff's prescription, while Defendant's duty was to order supplies when they ran out and to issue Plaintiff's prescription. (Doc. 238, p. 8). When Defendant first learned that Plaintiff had not been given a new catheter, he issued a prescription requiring that Plaintiff be given a new catheter every other day. (Doc. 221, p. 3). If Plaintiff ran out of his medical supplies, he would ask a nurse to refill those supplies. (Doc. 221, p. 15). There is no evidence that Plaintiff told Defendant he did not have access to fresh catheters or other necessary medical supplies after Defendant updated Plaintiff's prescription. Defendant therefore

did not have actual knowledge about Plaintiff's lack of access to those supplies. (Doc. 221, p. 15).

A needless delay in medical supplies may be indicative of deliberate indifference "depending on the 'seriousness of the condition and the ease of providing treatment' and whether the plaintiff 'provide[s] independent evidence that the delay exacerbated the injury or unnecessarily prolonged pain.'" *Stewart v. Wall*, No. 16-2824, 688 Fed. Appx. 390, 394 (7th Cir. May 5, 2017)(citing *Petties*, 836 F.3d at 730–731). It is undisputed that Defendant subjectively knew that Plaintiff was re-using his catheter at some point during his incarceration. In fact, Defendant noted so in his treatment notes during his first meeting with Plaintiff. However, Defendant then ordered that Plaintiff be provided a new catheter every other day. Plaintiff did not then go without catheters again until he was transferred to segregation. (Doc. 231, p. 6). Neither party has alleged that catheters were out of stock or otherwise unavailable. Nor is there any evidence that Plaintiff informed Defendant that he was not receiving a new catheter per his prescription. There was thus no opportunity for Defendant to act to correct the situation. Without evidence that Defendant knew the orders he gave through his prescription to Plaintiff were not being followed, a reasonable jury could not find that Defendant had actual knowledge of the risk to Plaintiff that he would be without clean catheters. Therefore, summary judgment is denied as to the issue of Plaintiff's necessary medical supplies.

### C. *Plaintiff's access to showers*

Defendant asserts that Plaintiff was medically allowed to access the showers, but that correctional staff was required to escort Plaintiff to those showers. (Doc. 221, p. 15).

Per Plaintiff's medical chart, Plaintiff was medically permitted to shower up to three times per week. (Doc. 221, p. 6; Doc. 231, p. 4). When Plaintiff complained to Defendant that he was not receiving showers, Defendant ordered nightly showers in the HCU indefinitely. (Doc. 221, p. 7; Doc. 231, p. 5). Defendant therefore did not know that Plaintiff was not receiving showers after that order, and did not have a say in correctional staff's decision to bring Plaintiff to the showers. (Doc. 221, p. 15).

Plaintiff responds that Defendant should have known the risk of harm associated with Plaintiff's inability to access showers because Defendant noted the need for showers in Plaintiff's medical chart. (Doc. 231, p. 15). However, there is no evidence that Defendant knew his orders that Plaintiff receive daily showers were not being executed. Correctional officers were responsible for ensuring that Plaintiff was able to shower, but there is no evidence to indicate that those officers' failure to ensure that Plaintiff was getting such showers was ever reported to Defendant. Defendant therefore had no opportunity to mitigate the risk of harm to Plaintiff; accordingly, summary judgment is granted as to this issue.

### III. Defendant's Diagnosis and Treatment of Plaintiff's Right Foot Injury

A defendant physician will not be found deliberately indifferent to a plaintiff's serious medical need on the basis of the defendant's treating decisions unless those decisions represent "such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008)(citing *Sain v. Wood*, 512 F.3d 886, 895 (7th Cir. 2008), overruled on other grounds by *Pearson v.*

*Callahan*, 555 U.S. 223 (2009)). In particular, a defendant physician's treatment decisions are entitled to deference unless no minimally competent professional would have so responded under the circumstances. *See Sain*, 512 F.3d 886 at 894-895. Evidence of misdiagnosis, alone, cannot overcome this deference. *See Zackery v. Mesrobian*, No. 07-4064, 299 Fed. Appx. 598, 601 (7th Cir. Nov. 17, 2008); *Williams v. Guzman*, No. 08-2167, 346 Fed. Appx. 102, 106 (7th Cir. Oct. 2, 2009); *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010); *Finney v. David*, No. 17-CV-53-SMY, 2020 WL 1181740, at *3 (S.D. Ill. Mar. 11, 2020); *Nolan v. Sawar*, No. 15-cv-01386-NJR, 2016 WL 192651, at *3 (S.D. Ill. Jan. 15, 2016). When a plaintiff's condition is complex, a court is especially unlikely to consider misdiagnosis to be inherently indicative of deliberate indifference. *See Nolan*, 2016 WL 192651, at *3. Instead, a plaintiff must show that the defendant actually knew of the proper diagnosis and consciously disregarded an associated risk of harm, that the actions leading to the misdiagnosis were a substantial departure from professional judgment, or that treatment decisions stemming therefrom were blatantly inappropriate. *See Finney*, 2020 WL 1181740, at *3. *See also Williams*, 346 Fed. Appx. at 106 (holding that a defendant's misdiagnosis of a plaintiff's eye condition was not deliberately indifferent because that defendant was not aware of any risk to plaintiff's eye).

The parties agree that, due to a spinal cord injury, Plaintiff had difficulty walking prior to a fall when Plaintiff swung his walker in April 2017. (Doc. 221, p. 17; Doc. 231, p. 15). The parties also agree that, at some point, Plaintiff developed "drop foot," a disorder causing the inability to flex the foot due to damage to the peroneal nerve below the knee. (Doc. 221, p. 17; Doc. 231, p. 15). However, Plaintiff maintains that his ability to walk

significantly declined after he fell; shortly thereafter, he experienced numbness in his right foot, began falling, and could no longer walk without dragging his foot. (Doc. 231, p. 15). Plaintiff also states that he did not develop drop foot until after his fall. (Doc. 231, p. 15). This timing is particularly important, Plaintiff asserts, because those with drop foot can make a complete recovery when treated early and adequately. (Doc. 231, p. 16). Plaintiff contends that, although Defendant eventually prescribed Plaintiff a foot brace for his drop foot one month after Plaintiff's fall, the diagnosis of drop foot was too late to prevent the disability from becoming permanent. (Doc. 231, p. 16).

In contrast, Defendant argues that Plaintiff developed drop foot due to his spinal injury, long before his fall. (Doc. 221, p. 17). When Plaintiff informed Defendant of his fall and injury to his knee, Defendant examined Plaintiff and discontinued his prescription for a muscle relaxer; Defendant also prescribed Plaintiff a walker instead of a wheelchair so that Plaintiff could avoid muscle atrophy. (Doc. 221, p. 16-17). Defendant then ordered Plaintiff a foot brace after Plaintiff complained that his foot caused him to trip while walking; prior to that complaint, Defendant maintains that Plaintiff did not express that his foot caused him problems. (Doc. 221, p. 17). In the alternative, Defendant contends that, because drop foot occurs at the outset of nerve damage, Defendant could not have provided any treatment bringing Plaintiff relief, and Defendant's late treatment of Plaintiff's drop foot did not cause substantial harm. *Cf. Langston,* 100 F.3d at 1240 (requiring that a plaintiff demonstrate both deliberate indifference and that the deliberate indifference resulted in substantial harm).

Although it remains an open question whether Defendant accurately diagnosed Plaintiff, even if Defendant misdiagnosed Plaintiff's drop foot, that misdiagnosis is not indicative of deliberate indifference. There is no evidence that Defendant's opinion that Plaintiff's drop foot stems from his spinal injury and is therefore permanent is beyond the bounds of professional judgment; such an injury could validly cause drop foot, and Plaintiff demonstrated symptoms similar to drop foot prior to his fall. Most importantly, however, Defendant continued to treat Plaintiff's symptoms, including by discontinuing his muscle relaxer prescription and assigning Plaintiff a walker to avoid the weakening of his muscles. Even if Defendant misdiagnosed Plaintiff, this is not indicative of deliberate indifference. Summary judgment is therefore granted on this issue.

## CONCLUSION

For the above-stated reasons, Defendant's motion for summary judgment is **GRANTED**.

**IT IS SO ORDERED.**

Dated:  January 14, 2021.

Digitally signed by Judge Sison 2
Date: 2021.01.14 12:49:49 -06'00'

_____

GILBERT C. SISON
United States Magistrate Judge