## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DEANDRE BRADLEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | Case No. 3:17-cv-00862-GCS |
| JEFFREY DENNISON, KAREN ) | |
| SMOOT, ALFONSO DAVID, ) | |
| ROBERT JEFFREYS, and ) | |
| JONATHAN BOTARF, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

### INTRODUCTION AND BACKGROUND

Plaintiff Deandre Bradley is an inmate within the Illinois Department of Corrections ("IDOC"). Though he currently resides at Menard Correctional Center, during the events underlying this dispute, Plaintiff was housed at Shawnee Correctional Center ("Shawnee"). (Doc. 225, p. 1). On August 14, 2017, Plaintiff brought this claim pursuant to 42 U.S.C. § 1983 against numerous defendants with the IDOC, including Defendants Jeffrey Dennison, Karen Smoot, Robert Jeffreys,[1] Jonathan Botarf, and Dr. Alfonso David. (Doc. 1).

After preliminary review, the Court allowed Plaintiff to proceed on the following four Counts:

---

[1] Plaintiff brings this claim against Defendant Jeffreys in his official capacity as Acting Director of the IDOC. (Doc. 225, p. 1).

**Count 1** - Defendants denied Plaintiff adequate medical care for his preexisting medical conditions stemming from an old stab wound when they denied him access to a wheelchair, walker, medical supplies, and showers at Shawnee beginning in March 2017, in violation of the Eighth Amendment.

**Count 2** - Defendants subjected Plaintiff to unconstitutional conditions of confinement when they denied him access to a wheelchair, walker, medical supplies, showers, and a handicap accessible cell at Shawnee beginning in March 2017, in violation of the Eighth Amendment.

**Count 3** - Defendants violated Plaintiff's rights under the Rehabilitation Act and/or Americans with Disabilities Act when they deprived him of a wheelchair, walker, medical supplies, showers and adequate housing at Shawnee beginning in March 2017.

**Count 4** - Dr. David and Nursing Director Wilke exhibited deliberate indifference to Plaintiff's serious medical needs when they failed to ensure that his right leg and foot injuries were promptly treated after he fell three times in his segregation cell in May 2017, in violation of the Eighth Amendment.

(Doc. 12). The Court allowed Counts 1 and 2 to proceed against Defendants Dennison, Smoot, and Dr. David. *Id.* The Court further permitted Count 3 to proceed against Defendants Dennison and Jeffreys in their official capacity only. *Id.* Finally, the Court allowed Count 4 to proceed against Dr. David. *Id.* Plaintiff then added Defendant Jonathan Botarf in an amended complaint filed on December 6, 2018. (Doc. 94). In his amended complaint, Plaintiff alleges that Defendant Botarf caused injury to Plaintiff when he required Plaintiff to wear waist restraints while using his walker to get to the shower. (Doc. 38, p. 6). Plaintiff does not name Defendant Botarf in a specific count of his amended complaint; however, because Plaintiff alleges that Defendant Botarf denied him showers in May 2017, *see* (Doc. 94), Plaintiff asserts that Defendant Botarf was deliberately indifferent to Plaintiff's pre-existing medical conditions as outlined in Count I of Plaintiff's amended complaint. *See* (Doc. 232, p. 11).

The Court granted summary judgment in favor of Dr. David on January 14, 2021. (Doc. 239). Accordingly, the Court dismissed Defendant David from the case. Now before the Court is the remaining Defendants' motion for summary judgment. (Doc. 223). For the reasons delineated below, the motion for summary judgment is **GRANTED in part and DENIED in part**.

## FACTUAL ANALYSIS

Prior to his incarceration, Plaintiff suffered a stab wound near his spinal cord. (Doc. 225, p. 4). As a result of the injury, Plaintiff requires ambulatory assistive devices in order to walk short distances. *Id.* The injury also rendered Plaintiff dual incontinent, requiring daily use of medical supplies, including catheters, diapers, wipes, under pads and enemas. (Doc. 232, p. 8).

Plaintiff first arrived at Shawnee on March 10, 2017. (Doc. 225, p. 4). While housed in the receiving unit, Plaintiff requested access to his necessary medical supplies; on March 11 and March 17, 2017, he wrote grievances stating that he did not have access to clean medical supplies. *Id.* at p. 4, 6. On March 20, 2017, Plaintiff talked directly with Defendants Smoot and Dennison regarding his lack of access to medical care and the need for an ADA-complaint cell. (Doc. 221, Exh. A, 82:18-19; 83: 3-7). Nevertheless, these grievances went unaddressed until March 23, 2017, when Defendant Smoot provided Plaintiff a memorandum outlining the medical supplies he was provided. (Doc. 225, p. 6). At some point between March 11 and March 23, a nurse provided Plaintiff with diapers. *Id.* at p. 4.

As of April 2017, Plaintiff used a walker to ambulate. (Doc. 225, p. 6). Though Plaintiff was initially permitted to use a wheelchair, on May 8, 2017, Dr. David discontinued Plaintiff's wheelchair use and prescribed a walker to avoid muscle stiffness. *Id.* at p. 7. However, Plaintiff was transferred to segregation the following day after being issued a disciplinary ticket for assaulting a prison staff member on April 30, 2017. *Id.* at p. 6. Plaintiff was not permitted to have a walker while in segregation. *Id.* at p. 7.

After reviewing Plaintiff's medical chart, medical staff permitted Plaintiff to shower three times per week. (Doc. 225, p. 7). Staff also advised Plaintiff to use the sink in his cell for daily hygiene. *Id.* While housed in segregation, Plaintiff requested his walker in order to use the sink facilities. *Id.* at p. 8. Although Plaintiff states he was permitted one shower between May 9 and May 22, 2017, Plaintiff's shower logs show that he refused a shower on May 11, 13 and 18, and Plaintiff's medical logs show that he was permitted to shower on May 16 and 20. *Id.* at p. 9. Plaintiff claims that in order to reach the shower, Defendant Botarf required Plaintiff to wear waist restraints while using his walker. *Id.* Defendant Botarf states he has no recollection of Plaintiff; even though he was listed as working in Plaintiff's segregation unit, he was not the only official to do so at the time Plaintiff was housed in segregation. *Id.* at p. 10.

On May 9, 2017, Plaintiff fell and injured his right leg while in his segregation cell. (Doc. 225, p. 8). Plaintiff put in a Nurse Sick Call request the following Day. *Id.* Though Plaintiff claims he was not seen until May 24, 2017, his medical records indicate that a doctor saw him on May 20th. *Id.*

Plaintiff's access to fresh medical supplies was again disrupted on May 11, 2017. (Doc. 225, p. 7). Though Plaintiff wrote to Defendant Smoot requesting medical supplies on May 11 and May 12, 2017, he did not receive those supplies until May 17, 2017. *Id.* at p. 7-8.

Plaintiff was transferred out of segregation on May 22, 2017. (Doc. 221, Exh. A, 119:22-4, 120:1-4). Warden Dennison then spoke with Plaintiff again on May 24, 2017. *Id.* at 183:5-9. At that time, Warden Dennison told Plaintiff he could now use his walker and take showers. *Id.* at 112:1-8.

### LEGAL STANDARDS

Summary judgment is proper when the pleadings and affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. PROC. 56(c); *Oates v. Discovery Zone*, 116 F.3d 1161, 1165 (7th Cir. 1997)(citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). The movant bears the burden of establishing the absence of a genuine issue as to any material fact and entitlement to judgment as a matter of law. *See Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997)(citing *Celotex*, 477 U.S. at 323). This Court must consider the entire record, drawing reasonable inferences and resolving factual disputes in favor of the non-movant. *See Regensburger v. China Adoption Consultants*, *Ltd.*, 138 F.3d 1201, 1205 (7th Cir. 1998)(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). *See also Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009)(stating that "we are not required to draw every conceivable inference from the record . . . we draw only reasonable inferences") (internal citations omitted). Summary judgment is also appropriate if a plaintiff cannot

make a showing of an essential element of his claim. *See Celotex*, 477 U.S. at 322. While the Court may not "weigh evidence or engage in fact-finding[,]" it must determine if a genuine issue remains for trial. *Lewis v. City of Chicago*, 496 F.3d 645, 651 (7th Cir. 2007).

In response to a motion for summary judgment, the non-movant may not simply rest on the allegations in his pleadings; rather, he must show through specific evidence that an issue of fact remains on matters for which he bears the burden of proof at trial. *See Walker v. Shansky*, 28 F.3d 666, 670–671 (7th Cir. 1994), aff'd, 51 F.3d 276 (citing *Celotex*, 477 U.S. at 324). No issue remains for trial "unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party . . . if the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–250 (citations omitted). *Accord Starzenski v. City of Elkhart*, 87 F.3d 872, 880 (7th Cir. 1996); *Tolle v. Carroll Touch, Inc.*, 23 F.3d 174, 178 (7th Cir. 1994). In other words, "inferences relying on mere speculation or conjecture will not suffice." *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 407 (7th Cir. 2009) (internal citation omitted). *See also Anderson*, 477 U.S. at 252 (finding that "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]"). Instead, the non-moving party must present "definite, competent evidence to rebut the [summary judgment] motion." *EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000) (internal citation omitted).

ANALYSIS

**I.      Whether Defendants Smoot, Dennison, and Botarf were Deliberately Indifferent to Plaintiff's Pre-Existing Medical Condition**

A prisoner seeking to establish that the care he received in prison was so insufficient as to violate his Eighth Amendment rights must prove that: (1) he had an objectively serious medical need, and (2) the defendant prison official was deliberately indifferent to that need. *See Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011). *See also Greeno v. Daley*, 414 F.3d 645, 652-653 (7th Cir. 2005); *Langston v. Peters*, 100 F.3d 1235, 1240 (7th Cir. 1996); *Thomas v. Walton*, 461 F. Supp. 2d 786, 793 (S.D. Ill. 2006). A medical condition is objectively serious if a physician has determined that treatment is mandated, or if it is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Johnson v. Snyder*, 444 F.3d 579, 584-585 (7th Cir. 2006)(citing *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997)), overruled on other grounds in *Hill v. Tangherlini*, 724 F.3d 965, 968 n.1 (7th Cir. 2013). Here, Defendants admit that Plaintiff had an objectively serious medical need. (Doc. 225, p. 14).

In order to be deliberately indifferent to an objectively serious medical need, a defendant must know of and disregard an excessive risk to the plaintiff's health. *See Greeno*, 414 F.3d at 653. The defendant prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837-838 (1994). Moreover, "[d]eliberate indifference implies at a minimum actual knowledge of impending harm easily preventable, so that a conscious, culpable refusal to prevent harm can be inferred

from the defendant's failure to prevent it." *Thomas*, 461 F. Supp. 2d at 793 (citing *Duckworth v. Franzen*, 780 F.2d 645, 653 (7th Cir. 1985), abrogated on other grounds by *Haley v. Gross*, 86 F.3d 630, 645 n.34 (7th Cir. 1996)). Deliberate indifference is more than negligence; instead, the proper standard "approaches intentional wrongdoing." *Johnson*, 444 F.3d at 585. *See also Rosario v. Brown*, 670 F.3d 816, 821-822 (7th Cir. 2012)(requiring a plaintiff show defendants had near "total unconcern" for the plaintiff's welfare). Accordingly, the failure to alleviate a risk officials should have perceived, but did not, is not a violation of the Eighth Amendment. *See Farmer*, 511 U.S. at 826.

In Count 1, Plaintiff complains that Defendants Smoot, Dennison and Botarf were deliberately indifferent when they failed to provide Plaintiff with necessary ambulatory devices (a walker and a wheelchair), medical supplies, medical accommodations, and showers. *See* (Doc. 94, p. 27-40). Plaintiff further claims in Count 4 that all Defendants were deliberately indifferent to his serious medical need by failing to provide him promptly with medical attention after he injured his right leg. (Doc. 101, p. 48).

Defendants first assert that they deferred to medical officials' decisions regarding the determination to provide Plaintiff with assistive ambulatory devices. (Doc. 225, p. 14-17). Second, Defendants claim that the delay between Plaintiff requesting medical supplies and him receiving those supplies was not long enough to constitute deliberate indifference. *Id.* at p. 17-18. Third, Defendants argue that Plaintiff was actually provided adequate showers; in the alternative, none of the Defendants had actual knowledge that Plaintiff was not receiving his ordered showers. *Id.* at p. 18-20. Lastly, Defendants assert that Plaintiff received prompt medical attention after injuring his right leg. *Id.* at p. 19-20.

### a. Plaintiff's Access to Ambulatory Assistive Devices

When a prisoner is under a medical expert's care, non-medical prison officials are "generally justified" in presuming that the prisoner is receiving adequate medical care. *Arnett*, 658 F.3d at 755 (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004)). Similarly, a superior non-medical official may be justified in believing that their subordinates are properly caring for a prisoner; an inmate may not demonstrate a non-medical official's deliberate indifference by showing mere negligence in that official's failure to detect and prevent a subordinate's misconduct. *See Vance v. Peters*, 97 F.3d 987, 993 (7th Cir. 1996). Even if an official is aware of a prisoner's serious medical condition, if that official believes that the prisoner is receiving medical care, the official is not obligated to take further action. *See Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009). Requiring otherwise would undermine the general principle that prison officials are "responsible for their own misdeeds," but not responsible for the misdeeds of another. *Id*.

However, if officials have actual knowledge of a doctor's mistreatment of an inmate and still decline to act, that official may be deliberately indifferent to the inmate's serious medical needs. *See Johnson v. Doughty,* 433 F.3d 1001, 1012 (7th Cir. 2006); *Greeno,* 414 F.3d at 655–656. In order to provide officials with actual knowledge, a prisoner must communicate an underlying issue to the officials sufficient enough to alert them to an excessive risk to the prisoner's health. *See Vance*, 97 F.3d at 993 (quoting *Farmer*, 511 U.S. at 837).  Once an official is alerted to such a risk, the refusal to exercise the authority of the official's office may reflect deliberate disregard. *See Arnett*, 658 F.3d at 756.

It is clear that Defendants were generally justified in deferring to Dr. David's medical recommendations regarding Plaintiff's access to a wheelchair. Plaintiff suffers from a nerve injury affecting his right leg. (Doc. 232, p. 8). When Dr. David examined Plaintiff on May 8, 2017, he determined that Plaintiff should use a walker, rather than a wheelchair, in order to prevent muscle atrophy and stiffness. (Doc. 225, p. 7). Defendants cannot be held liable for failing to provide Plaintiff with access to a wheelchair as that would have contravened Dr. David's medical orders. As such, Defendants were not deliberately indifferent in failing to provide Plaintiff with a wheelchair, but whether Defendants were deliberately indifferent by failing to provide Plaintiff with a walker remains a genuine dispute of material fact.

Declining an inmate access to ambulatory devices because of a security risk and relying on subordinates for the care of inmates in need of such devices are not inherently indicative of deliberate indifference. *See Johnson*, 444 F.3d at 586, overruled on other grounds by *Hill v. Tangherlini*, 724 F.3d 965 (7th Cir. 2013). For instance, in *Johnson*, the amputee plaintiff often used a crutch rather than a prosthetic; however, the plaintiff's crutch presented a security risk because it could be used as a weapon. *Id*. at 583. After examination by a doctor, who determined the plaintiff's crutch was not medically necessary, prison officials allowed the plaintiff to choose whether to use his crutch in segregation or to forgo his crutch and be housed in general population. *Id*. The plaintiff chose to forgo his crutch. *Id*.

Shortly thereafter, the plaintiff slipped in the shower while reattaching his prosthetic leg. *See Johnson*, 444 F.3d at 583. Through the facility's grievance procedures,

the plaintiff alerted the warden of his injury and the lack of access to his crutches. *Id*. at 586. However, the warden denied the plaintiff's concerns because he believed his subordinates were adequately addressing the situation. *Id*. The Seventh Circuit found that the warden was not deliberately indifferent to the plaintiff's serious medical needs because the warden was justified in believing that his subordinates and the prison doctor were adequately meeting those medical needs and rectifying the underlying situation. *Id*.

Relying on *Johnson*, Defendants note that the prison's strict security requirements justified Plaintiff's lack of access to a walker. Specifically, Defendants argue that the failure to provide Plaintiff with a walker in his cell is not indicative of deliberate indifference because Plaintiff did not have a required permit for the walker while housed in segregation. (Doc. 225, p. 15). Inmates housed in segregation at Shawnee may not have an ambulatory device unless a doctor has ordered it and determined it is medically necessary. *Id*. Therefore, relying on *Johnson*, Defendants argue they were justified in the assumption that Plaintiff did not need his walker in his cell because Dr. David did not issue the required permit. *See Id.*

However, this narrative is plainly contradicted by the provided facts. First, in Plaintiff's medical records, Dr. David regularly ordered that Plaintiff use a rolling walker for ambulation. *See, e.g.*, (Doc. 171-4, p. 2, 3, and 32)(referencing a portion of the numerous medical notes requiring Plaintiff's use of a walker). Though there is no evidence of a specific permit for Plaintiff to use a walker in a segregation cell, Dr. David notes that Plaintiff must use his walker to get the water necessary to take his prescriptions. (Doc. 171-4, p. 32). Dr. David further notes that Plaintiff keeps his walker near his bed in order

to ambulate each morning. *Id.* at p. 40. Security officials, however, may override a doctor's medical decisions when determining whether to provide an inmate with ambulatory devices which may be used as a weapon. *See* (Doc. 232, Exh. 1 at 30:16-20). The decision to deny Plaintiff's access to a walker in his segregation cell appears to have been a security decision which overrode Dr. David's medical decisions. *See, e.g.*, (Doc. 239, p. 13-14)(noting that Dr. David did not participate in the decision to take away Plaintiff's walker because only security could make that decision).

In light of the above facts, Defendants' reliance on *Johnson* is misplaced. Unlike in *Johnson*, in which the defendant warden relied on his subordinates to rectify the plaintiff's situation, it was Dr. David who relied on Defendants to comply with his medical orders. Furthermore, Defendants were not justified in assuming Dr. David had made a medical decision to forego providing Plaintiff with a walker. Dr. David noted that Plaintiff needed his walker for basic things such as getting water and for ambulation near his bed. It is true that Dr. David did not issue a permit to facilitate that access while Plaintiff was housed in segregation. But, the Defendants cannot draw the inference that Dr. David found the walker to not be medically necessary simply because a permit was not issued. Such an inference is not justified given the explicit order for a walker and the consistently recognized need for the device in Plaintiff's medical records. Rather, the appropriate inference to draw is in favor of the Plaintiff, as the Court is required to do, and that inference is that Dr. David's medical decision was overridden by prison staff. The Defendants thus cannot escape liability by engaging in a "blame game" with Dr. David.

Therefore, Plaintiff's access to a walker remains a genuine issue of material fact, and summary judgment must be denied as to this issue.

### b. Plaintiff's Access to Necessary Medical Supplies

Delays in treating painful medical conditions may support a claim under the Eighth Amendment even when the underlying condition for which treatment is sought is not life-threatening. *See Gutierrez v. Peters*, 111 F.3d 1364, 1374 (7th Cir. 1997). An inexplicable delay in treatment which serves no penological interest may support an inference that prison officials were deliberately indifferent to an inmate's serious medical needs. *See Petties v. Carter*, 836 F.3d 722, 730 (7th Cir. 2016)(citing *Grieveson v. Anderson*, 538 F.3d 763, 779 (7th Cir. 2008)). *See also Edwards v. Snyder*, 478 F.3d 827, 830 (7th Cir. 2007)(holding that defendants were deliberately indifferent when they denied the plaintiff treatment for his dislocated finger for two days). When determining whether a delay indicates deliberate indifference, courts consider the seriousness of the condition for which treatment is delayed and the ease of providing treatment for that condition. *Id.* Furthermore, in order to predicate an Eighth Amendment claim on a delay in treatment, a plaintiff must show that the delay exacerbated the injury or unnecessarily prolonged pain. *See Williams v. Liefer*, 491 F.3d 710, 716 (7th Cir. 2007).

A significant delay in treatment clearly supports finding deliberate indifference when the materials for treatment are widely available and easily obtainable. *See, e.g., Miller v. Campanella*, 794 F.3d 878, 880 (7th Cir. 2015)(finding that the defendants' delay in providing the plaintiff with over-the-counter pills to treat gastro-esophageal reflux disease for two months demonstrated deliberate indifference). Even a short delay may be

indicative of deliberate indifference when an inmate's condition causes considerable pain. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009). For example, in *Rodriguez*, prison staff incorrectly administered an intravenous line in the plaintiff's arm. *Id*. at 819-820. During the plaintiff's four-day hospital stay, staff treated plaintiff's resulting pain by pushing the intravenous line further into the plaintiff's arm and providing him with an ice pack. *Id*. at 832. As a result of the delay in treatment, the plaintiff developed a serious and contagious infection. *Id*. The Seventh Circuit found that, given the alleged facts, the plaintiff sufficiently stated a claim under the Eighth Amendment to survive a motion to dismiss. *Id*. In contrast, a similar delay for a less painful condition may be tolerated under the Eighth Amendment. *See, e.g., Gutierrez*, 111 F.3d at 1374 (finding that the plaintiff could not survive summary judgment when officials delayed treating a mild cyst infection for six days).

Courts recognize that "delays are common in a prison setting with limited resources[.]" *Petties*, 836 F.3d at 730. Prison officials, however, must provide treatment sufficient to meet the "civilized minimum of public concern for the health of prisoners." *Ralston v. McGovern*, 167 F.3d 1160, 1162 (7th Cir. 1999). This civilized minimum is "a function of both objective need and of cost." *Id*. When the cost of providing treatment is low, the failure to do so is especially indicative of deliberate indifference. *See Id.* For instance, in *Gil v. Reed*, the defendant denied the plaintiff his pain medication, although that medication had been prescribed and dispensed before the plaintiff requested it. 381 F.3d 649, 662 (7th Cir. 2004). The prescribed antibiotic was necessary to treat a severe infection; though the plaintiff obtained the medication the following day, the Seventh

Circuit found the delay demonstrated deliberate indifference. *Id.* Similarly, in *Wynn v. Southward*, the plaintiff repeatedly informed prison officials that he needed his heart medication "immediately" in order address a heart flutter and substantial chest pains. 251 F.3d 588, 594 (7th Cir. 2001). Citing to *Ralston*, 167 F.3d at 1162, the Seventh Circuit noted that the defendants' delay in providing the plaintiff's necessary heart medication supported a claim for deliberate indifference under the Eighth Amendment. *Id.*

In the present case, Plaintiff is dual incontinent and requires daily access to both catheters and diapers. (Doc. 232, p. 14). However, Plaintiff claims that Defendants Smoot, Dennison, and Botarf delayed in providing Plaintiff with these necessary supplies twice during his incarceration at Shawnee. *Id.* First, Plaintiff claims that he requested catheters and diapers when he first arrived at Shawnee on March 10, 2017. *Id.* Although Plaintiff wrote grievances requesting his medical supplies on March 11 and March 17, 2017, those grievances were not addressed until March 23, 2017. *Id.* Second, Plaintiff requested the same medical supplies after he was transferred to segregation on May 11, 2017. *Id.* at p. 15. This delay was shorter as Plaintiff received catheters and diapers six days after first complaining that he did not have his supplies. *Id.*

Regarding the first delay, Defendants imply that regular prison processes and limited supplies prevented prison officials from immediately providing Plaintiff with diapers, catheters, wipes, enemas and under pads. (Doc. 225, p. 17). Defendants point out that a medical aide informed Plaintiff that it would "take a little time to get it all together." *Id.* Furthermore, Defendants state that a nurse provided Plaintiff with diapers during the time between Plaintiff's complaint and when he was eventually seen by a doctor. *See, e.g.,*

(Doc. 225, p. 17)(citing to Plaintiff's deposition, attached to Doc. 171 as Exh. 1, at 79:17-21). However, in the cited deposition, it is not clear when or how often the nurse brought Plaintiff diapers or whether she provided any other medical supplies during this delay. *See* (Doc. 171, Exh. 1 at 79:17-21). In response, Plaintiff points out that his overall delay in receiving necessary medical supplies lasted for two weeks. (Doc. 232, p. 14).

Defendants also assert that the second delay was not intolerable as Plaintiff only went five days without his medical supplies. (Doc. 225, p. 18). However, Plaintiff asserts that this delay was actually six days given that Plaintiff first complained of his lack of medical supplies on May 11, 2017 and complained again on May 12, 2017. (Doc. 232, p. 15). Plaintiff also states that during this time he was not permitted to shower, which exacerbated the effect of the dirty medical supplies he used during that time. *Id.* at p. 14-15. As a result of the lack of access to showers and to medical supplies, Plaintiff developed a fungal infection in and around his penis. *Id.* at p. 9.

A reasonable jury could find that Defendants' first delay in providing Plaintiff with medical supplies demonstrated deliberate indifference. Much like over-the-counter gastro-esophageal reflux medication, Defendants could access at least diapers, wipes and under pads at little cost and relatively quickly. In fact, in the same deposition to which Defendants cited, Plaintiff states that he had extra catheters, wipes and under pads available in his property, which was not made readily available to him until two or three weeks after Plaintiff arrived at Shawnee. (Doc. 171, Exh. 1 at 77:7-20). Therefore, much as in *Gil*, Defendants could quickly have obtained and provided Plaintiff with at least some initial medical supplies at no cost. Furthermore, similar to *Wynn*, Plaintiff's need for the

supplies was extremely high. Without catheters, diapers, wipes, and enemas, Plaintiff was forced to remain in his own excrement until he was permitted to shower. A nearly two-week delay in providing these medical supplies could support a finding of deliberate indifference. Finally, though Defendants allege that a nurse provided some supplies at least once to Plaintiff during his thirteen-day wait, it is not clear how often or what supplies that nurse provided, leaving this issue a genuine dispute of material fact.[2]

Similarly, a reasonable jury could also find that the second delay was indicative of deliberate indifference. Though the delay lasted only six days, the Seventh Circuit has found delays as short as four days as indicative of deliberate indifference when a plaintiff has a substantial need for treatment or is otherwise in substantial pain. *Cf. Gil*, 381 F.3d at 662 (inferring deliberate indifference from an over-night delay when the delay may have been intentional and the plaintiff had a substantial need for the medication); *Rodriguez*, 577 F.3d at 823 (finding a four-day delay in treatment supported an inference of deliberate indifference when the plaintiff was in substantial pain). Here, the inability to use fresh medical supplies exacerbated Plaintiff's condition and led to a fungal infection. Plaintiff has shown that the delay contributed to prolonged pain and injury; accordingly, even a six-day delay in this case may sufficiently support a reasonable jury in finding the Defendants were deliberately indifferent to Plaintiff's serious medical needs.

---

[2]     To the extent that Defendant Smoot alleges she was without actual knowledge of Plaintiff's lack of medical supplies because she was not alerted to the appeal of any grievance on the issue to the Administrative Review Board, *see* (Doc. 225, p. 18), this argument is denied. Defendant Smoot provided Plaintiff with a memorandum regarding his March 10 and March 11 grievances on March 23. *Id.* It is clear that Defendant Smoot had actual knowledge of this delay.

### c.  Plaintiff's Access to Showers

The Seventh Circuit typically examines an inmate's access to showers under the standard for evaluating whether an inmate's conditions of confinement violate the Eighth Amendment. *See Jaros v. Ill. Dept. of Corr.*, 684 F.3d 667, 670-671 (7th Cir. 2012)(citing *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). Here, however, Dr. David specifically ordered Plaintiff to shower at least once daily, or as needed, due to Plaintiff's dual incontinence; a nurse practitioner then changed the prescription for showers to three times per week in order to comply with the maximum number of showers permitted to those housed in segregation. (Doc. 232, Exh. A, 22:8-15 ; 46:1-6). Thus, failing to provide access to showers should be treated no differently than any other treatment regimen ordered by the doctor for his pre-existing conditions. For example, in Count 1, Plaintiff alleges that Defendants' failure to facilitate his access to showers violated the Eighth Amendment by exacerbating his pre-existing condition. *See* (Doc. 94, p. 27-40). Though the healthcare staff instructed Plaintiff to shower three times per week, Plaintiff claims that Defendants did not permit him to shower as required by his healthcare plan. *See* (Doc. 225, p. 18-19).

Plaintiff asserts that between May 9 and May 22, 2017, Defendants only allowed Plaintiff to shower once, on May 16, 2017.[3] (Doc. 225, p. 18). Defendants advance two arguments in opposition. First, Defendants assert that Plaintiff's shower logs show that

---

[3]     There is some discrepancy regarding the time frame in which Plaintiff was not permitted to shower. *See* (Doc. 225, p. 19). The common date alleged in both the motion for summary judgment and the response to the motion for summary judgment is May 9 through May 22, 2017. *See* (Doc. 232, p. 16).

he refused a shower on May 9, 13, and 18. *Id.* at p. 19. According to Plaintiff's medical records, he then received showers on May 16, 20, and 24. *Id.*

In response, Plaintiff points out that his shower log and medical records are inconsistent. (Doc. 232, p. 16). On May 11, Plaintiff's shower log shows that Plaintiff did receive a shower. (Doc. 225, Exh. D). However, due to Plaintiff's disability, each of his showers were to be noted in his medical records. (Doc. 232, p. 16). Plaintiff's medical records do not show that Plaintiff had a shower on that day. *Id.* Defendants also do not allege that Plaintiff showered that day in their motion for summary judgment. (Doc. 225, p. 18-19). Furthermore, Plaintiff points to Defendant Dennison's deposition, in which Defendant Dennison stated that on some days, Plaintiff went without a shower, but officials did not document a refusal and no other explanation, such as a disciplinary ticket, existed to explain the discrepancy. *See, e.g.*, (Doc. 232, p. 16)(citing to Doc. 225, Exh. A at 53:22-25, 54:1-4). Typically, showers are offered every other day; but because Plaintiff's shower schedule was medically ordered, he was permitted to shower in the healthcare unit when his schedule aligned with "off days" in the general shower schedule. (Doc. 225, Exh. A at 54:5-15). There is no indication that Plaintiff received a shower in the healthcare unit on days when the general shower was not offered. *Id.* at 54:16. Plaintiff adamantly denies that he refused a shower during that time period. (Doc. 232, p. 17).

As an initial matter, Plaintiff's shower logs and medical records show that he was offered the chance to shower twice during the week of May 7, one less time than health care staff required for Plaintiff. Furthermore, considering the facts in the light most

favorable to the non-moving party, a genuine dispute as to whether Plaintiff refused showers or was not offered a shower exists. Plaintiff's shower log does not align with his medical records, and Plaintiff himself states that he did not refuse a shower. The issue of whether Plaintiff was permitted to shower and refused or whether Plaintiff was not permitted to shower should be determined by a trier of fact.

Second, Defendants assert that none of the three defendants had actual knowledge of Plaintiff's lack of access to showers. According to Defendants, neither Defendant Dennison nor Defendant Smoot assist inmates in medical matters, and neither Defendant was made aware that Plaintiff was not able to shower. (Doc. 225, p. 20). Plaintiff does not respond to this contention, and the Court finds no evidence in the record that either Defendant Dennison or Defendant Smoot had actual knowledge that Plaintiff was unable to shower.

Defendants also claim that Defendant Botarf did not have actual knowledge that Plaintiff was not adequately permitted to shower. (Doc. 225, p. 20). At the time of the underlying incidents, Defendant Botarf was one of two correctional officers assigned to the segregation unit building in which Plaintiff was housed. (Doc. 225, Exh. C). Plaintiff claims that Defendant Botarf denied him access to showers and forced him to use his walker while in waist restraints while accessing the shower on May 16, 2017. (Doc. 171, Exh. A). Defendants point out that Plaintiff only named Defendant Botarf because he was the one listed as working that day; Defendant Botarf further claims to have no recollection of Plaintiff. (Doc. 225, Exh. C). This argument, however, is insufficient to resolve genuine disputes regarding whether or not Defendant Botarf was responsible for denying Plaintiff

showers or for forcing Plaintiff to walk to the shower in waist restraints. Though Defendant Botarf does not recall Plaintiff, he was listed as working on the day of the underlying incident. Coupled with Plaintiff's direct assertions against Defendant Botarf, it is entirely possible that Botarf was directly involved in the events underlying this dispute. Therefore, the motion for summary judgment is denied on this issue, as to Defendant Botarf, but granted as to Defendants Smoot and Dennison.[4]

## II.    Whether Defendants Dennison and Smoot are Entitled to Summary Judgment on Plaintiff's Conditions of Confinement Claim

In order to succeed on an Eighth Amendment conditions of confinement claim, the plaintiff must make both an objective and subjective showing. First, the plaintiff must show that the conditions denied the plaintiff the "minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834. In some circumstances, multiple conditions of confinement may establish an Eighth Amendment violation, even when each condition individually would not establish a violation. *See Wilson v. Seiter*, 501 U.S. 294, 304 (1991). However, such a combination only establishes a violation when the conditions have a "mutually reinforcing effect" which produces a deprivation of a single, identifiable human need. *Id*. For example, while low temperatures or a lack of access to blankets are each insufficient to show a violation individually, the two factors together indicate a lack of warmth, which is an identifiable human need. *See id.*

---

[4]    The Court notes that Defendants also incorporate an argument alleging that they were not deliberately indifferent to Plaintiff's medical needs by providing delayed medical care after Plaintiff injured his knee into their claims regarding Plaintiff's access to showers. *See* (Doc. 225, p. 19-20). However, Plaintiff's claim for deliberate indifference regarding his knee injury is contained in Count IV. The Court dismissed this claim against Dr. David. *See* (Doc. 239). Accordingly, the Court declines to address that argument here.

Second, the plaintiff must show that the defendants knew of and disregarded a substantial risk of serious harm arising from the conditions in question. *See Farmer*, 511 U.S. at 842. When the underlying conditions are not the result of an emergency situation, this standard is equivalent to deliberate indifference. *See Whitley v. Albers*, 475 U.S. 312, 320 (1986)(citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). A plaintiff may meet this standard through circumstantial evidence, including evidence that the risk was so obvious a jury may reasonably infer the defendants' actual knowledge. *See Hall v. Bennett*, 379 F.3d 462, 464 (7th Cir. 2004).

The ability to wash and use the toilet is considered an identifiable human need the deprivation of which results in unconstitutional conditions of confinement. *See Jaros*, 684 F.3d at 670-671 (citing *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). The Seventh Circuit has consistently held that only a total deprivation of the ability to wash constitutes a constitutional violation. *Id*. at 671. There is therefore no violation if an inmate is able to shower even as little as once a week, *see Davenport v. DeRobertis*, 844 F.2d 1310, 1316 (7th Cir. 1988), or if an inmate chooses not to shower. *See Rodriguez v. Briley*, 403 F.3d 952, 953 (7th Cir. 2005).

Plaintiff claims that Defendants Dennison and Smoot were deliberately indifferent to Plaintiff's unconstitutional conditions of confinement, which arose when Plaintiff was denied access to showers, a walker, and necessary medical supplies. (Doc. 101, p. 45). Plaintiff did not have catheters, diapers, or wipes. Without his walker, Plaintiff was also not able to access the sink to wash himself nor was he able to take showers. As a result, Plaintiff alleges he was forced to sit in excrement for seven days prior to his May 16

shower and for another six days before his May 22 shower. (Doc. 232, p. 17). During these time periods, Plaintiff experienced a total deprivation of the human need to wash and use the toilet.

Defendants argue that summary judgment is appropriate because Defendants Dennison and Smoot did not have knowledge of Plaintiff's intolerable conditions. Although Defendant Smoot did not have actual knowledge that Plaintiff was not permitted to shower, she did have actual knowledge that Plaintiff did not have access to medical supplies or to a walker that would facilitate his use of the sink or toilet on days in which Plaintiff was not permitted to shower. Such knowledge is predicated, circumstantially, on her responsibility as Health Care Unit Administrator to review grievances (Doc. 232, Exh. B, 20:9-11); Plaintiff wrote multiple grievances regarding lack of access to medical supplies during both interruptions. Even if Defendant Smoot believed that Plaintiff could shower, she knew Plaintiff had between two or three days during which he could not use the sink to clean himself and could not medically use the toilet. Given Plaintiff's condition, even this short time frame is sufficient for establishing unconstitutional conditions of confinement. *See, e.g., Reed v. McBride*, 178 F.3d 849, 853 (7th Cir. 1999)(noting that courts are to evaluate deprivations by considering the length, severity and consequences of the deprivation).[5]

---

[5]    Plaintiff admits that he did not speak with Defendant Smoot regarding his inability to shower. *See* (Doc. 171-1, Exh. B, p. 91). There is no evidence in the record that Plaintiff otherwise grieved his inability to shower to Defendant Smoot, as he did regarding his lack of access to medical supplies and his walker. This leaves Defendant Smoot with knowledge that Plaintiff could not use the toilet or clean himself for at least four days each week, if Defendant Smoot justifiably relied on the assumption that others were facilitating Plaintiff's access to showers three times per week as required by Dr. David's medical orders. Therefore, though Defendant Smoot was not deliberately indifferent to Plaintiff's medical needs by

In contrast, however, there is no evidence that Defendant Dennison had the requisite knowledge of Plaintiff's intolerable conditions of confinement. It is true that Defendant Dennison talked with Plaintiff regarding his issues regarding medical supplies on March 20, 2017. *See* (Doc. 221, Exh. A, 82:18-19; 83: 3-7; 183:5-9). At that time, however, Plaintiff had not yet been transferred to segregation. Plaintiff did not speak with Defendant Dennison again until May 24, 2017, at which point Plaintiff had been transferred out of segregation. *Id*. at 111:9-12. It was only when Plaintiff lacked access to medical care, showers, and medical treatment, in totality, that Plaintiff's conditions became intolerable in violation of the Eighth Amendment. There is no other evidence in the record that Plaintiff informed Defendant Dennison of the intolerable conditions of his segregation cell. Accordingly, summary judgment is granted on this point for Defendant Dennison.

### III. Whether Defendants Jeffreys and Dennison Violated the Americans with Disabilities Act or the Rehabilitation Act

Count 3 of Plaintiff's complaint alleges that Defendants Jeffreys and Dennison, in their official capacities, violated the ADA and Rehabilitation Act. Title II of the ADA mandates that public entities may not deny participation or the benefits of services to qualified individuals with a disability by reason of that disability. *See* 42 U.S.C. § 12132. Similarly, Section 504 of the Rehabilitation Act prohibits any agency that receives federal funds from excluding, subjecting to discrimination, or denying the benefits of any of their

---

ignoring his need to shower, she was deliberately indifferent to his overall conditions of confinement during the periods in which Defendant Smoot would have evidence that Plaintiff was unable to clean himself.

programs to otherwise qualified individuals with disabilities. *See* 29 U.S.C. § 794(a). In *Jaros,* the Seventh Circuit found ADA and Rehabilitation Act claims can be analyzed together since the elements of both claims are the same, except that the Rehabilitation Act has an additional element of requiring receipt of federal funds. *See Jaros,* 684 F.3d at 671-672; *see also* 29 U.S.C. § 794(a). Because Illinois accepts federal funds to help run its prisons, that additional element is met here. *See id.*

Failure to make reasonable accommodations to ensure participation in the public entity's programs or services by a person with a disability qualifies as "discrimination." 42 U.S.C. § 12112(b)(5)(A); *Wisc. Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 753 (7th Cir. 2006). A plaintiff can establish a *prima facie* case of discrimination under both the ADA and the Rehabilitation Act by showing that they: (1) suffer from a disability as defined in the statutes, (2) are qualified to participate in the program in question, and (3) were either excluded from participating in or denied the benefit of that program based on a disability. *See Novak v. Bd. of Trustees of S. Ill. Univ.*, 777 F.3d 966, 974 (7th Cir. 2015)(citing *Jackson v. City of Chicago*, 414 F.3d 806, 810 (7th Cir. 2005)). Refusing to make reasonable accommodations for a disabled inmate is tantamount to denying that inmate access. *See Jaros*, 684 F.3d at 672; *see also A.H. by Holzmueller v. Ill. High Sch. Ass'n,* 881 F.3d 587, 592 (7th Cir. 2018).

If an inmate is unable to use the showers or toilet because he is housed in a non-ADA compliant cell, that inmate may establish a claim for a violation under the ADA and the Rehabilitation Act. *See Jaros*, 684 F.3d at 672. Furthermore, providing access to such facilities alone is insufficient to avoid liability; rather, disabled inmates must be afforded

meaningful access under the ADA and Rehabilitation Act. *See Banks v. Patton*, No. 17-1586, 743 Fed. Appx. 690, 697 n.1 (7th Cir. July 26, 2018)(citing *Alexander v. Choate*, 469 U.S. 287, 301 (1985)). For example, a prison must provide maximum-security inmates with ADA and Rehabilitation Act accommodations even if the only handicapped-accessible cells are in the minimum-security dormitory. *Id.* at 697 n.1.

Defendants admit that Plaintiff is an individual with a qualifying disability under the ADA and Rehabilitation Act. (Doc. 225, p. 24). Though Defendants further summarily assert that Plaintiff received sufficient accommodations, including access to medical supplies and showers, it is clear that Plaintiff's accommodations did not afford him meaningful access to showers, *see supra,* p. 18-21, and that, without access to his walker, Plaintiff could not meaningfully access the toilet. *See supra*, p. 22-25. However, it is not altogether clear that Plaintiff was denied such access by reason of his disability.

Defendants argue that Plaintiff was housed in segregation not because of his disability, but because he received a disciplinary ticket on April 30, 2017. (Doc. 225, p. 24). The offense underlying this disciplinary ticket included attempting to assault members of the prison staff. (Doc. 239, p. 2). Plaintiff was transferred from the healthcare unit to segregation based on this offense. (Doc. 225, p. 24).

Plaintiff cites to *Banks* and argues that the need to transfer and place him in segregation is contrary to settled law. (Doc. 232, p. 21-22). However, in *Banks*, the Court held that security concerns specific to the offender are neutral reasons for declining accommodations. 743 Fed. Appx. at 697. When a prisoner continues to pose a "disciplinary challenge" throughout the relevant time period, a prison's decision to

remove accommodations is not in violation of the ADA or the Rehabilitation Act because it is not made on the basis of the inmate's disability. *Id*. Therefore, summary judgment is granted on this issue. Because this is the only count concerning Defendant Jeffreys, the Court finds that Defendant Jeffreys may be dismissed from the case.

## IV.    Whether All Defendants are Entitled to Qualified Immunity

Government officials performing discretionary functions are shielded from liability for civil damages if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *See Harlow v. Fitzgerald*, 457 U.S. 800, 817-818 (1982). Courts evaluate whether an official is entitled to qualified immunity by examining whether the officials violated the plaintiff's rights as demonstrated by the alleged facts and whether the right allegedly violated was clearly established at the time of the violation. *See Saucier v. Katz*, 533 U.S. 194, 200 (2001), receded from by *Pearson v. Callahan*, 555 U.S. 223, 242 (2009)(holding that application of the two-step *Saucier* test is discretionary). Based on the facts alleged at this stage of the proceedings, it is clear that Defendants violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment by failing to provide him with a walker, necessary medical supplies, and access to showers. The remaining question is therefore whether this right was clearly established at the time of the underlying events.

The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable official that his conduct was unlawful in the context of the events giving rise to the violation. *See Saucier*, 533 U.S. at 202. For instance, in *Saucier*, the plaintiff was arrested during a speech by the Vice

President. *Id.* at 208. The plaintiff alleged that an officer's "gratuitously violent shove" during an arrest violated the Fourth Amendment; lower courts found the defendant was entitled to qualified immunity on that claim. *Id.* The Supreme Court agreed, holding that, under the circumstances, a reasonable officer "hurrying" the plaintiff away from the scene for the Vice President's security was an appropriate action within the contours of the Fourth Amendment. *Id.*

In contrast, there is no similar justifying interpretation for Defendants' violations of Plaintiff's Eighth Amendment rights. Defendants summarily assert that finding Plaintiff's right to access the walker and medical supplies required by his doctors, or finding that Plaintiff's right to conditions in which he can clean himself would apply a "heightened standard" to Eighth Amendment claims; Defendants, however, fail to explain why that standard would be "heightened." (Doc. 225, p. 25). The Court rejects this contention. This situation is not like *Saucier* where the Fourth Amendment permitted some undefined degree of physical coercion under certain circumstances. *See Graham v. Connor*, 490 U.S. 386, 396 (1989). Here, the Eighth Amendment clearly outlines what constitutes deliberate indifference and makes clear at what point officials have acted with such indifference sufficient to violate an inmate's constitutional rights. *See supra*, p. 7–25. Accordingly, the Court finds that Plaintiff's right to be afforded care without deliberate indifference to his serious medical needs and to be free from intolerable conditions of confinement are clearly established. Defendants' motion for summary judgment on the basis of qualified immunity is denied.

CONCLUSION

For the above-stated reasons, Defendant's motion for summary judgment is **GRANTED in part and DENIED in part**. Summary judgment is granted in part and denied in part as to Count 1. Specifically, summary judgment is granted as to Plaintiff's allegations that Defendants were deliberately indifferent in failing to provide him with a wheelchair. Summary judgment is also granted as to Defendants Dennison and Smoot regarding Plaintiff's ability to shower. However, summary judgment is denied as to Defendants Smoot and Dennison with respect to Plaintiff's claims regarding his walker and access to medical supplies. Summary judgment is also denied as to Defendant Botarf regarding Plaintiff's ability to shower. Furthermore, on Count 2, summary judgment is denied as to Defendant Smoot, but granted as to Defendant Dennison. Defendant Dennison is therefore dismissed from Count 2. Summary judgment is also granted as to Count 3. Accordingly, the Court DIRECTS the Clerk of the Court to dismiss Defendant Jeffreys from the case.

**IT IS SO ORDERED.**

**Dated:  March 31, 2021.**

Digitally signed by Judge Sison 2
Date: 2021.03.31 15:16:17 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**